# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEM ADIL ABOBKR, | CASE NO. 1:07-cv-00710-AWI-DLB (PC) |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND WITHIN THIRTY DAYS |
| v. | (Doc. 1) |
| M. MILLS, et al., | |
| Defendants. / | |

I.    Screening Order

    A.    Screening Requirement

Plaintiff, Adem Adil Abobkr, ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on May 14, 2007.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

1  claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

3  "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
4  exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534
5  U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a
6  short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.
7  Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the
8  plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court
9  may dismiss a complaint only if it is clear that no relief could be granted under any set of facts
10 that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a
11 plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support
12 the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and
13 unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting
14 Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171
15 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .
16 .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal
17 pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490
18 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply
19 essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin.,
20 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.
21 1982)).

22  B.  Plaintiff's Claims

23  The events at issue in the instant action allegedly occurred at C.C.A. California
24 City C.I., where plaintiff was incarcerated at the time of the allegations in his complaint.
25 Plaintiff names as defendants: M. Mills, Programs Manager; D. Ayers, Chaplain; and Lopez,
26 Teacher ("defendants") and alleges that they violated his rights to Freedom of Religion under the
27 First Amendment. Plaintiff is seeking monetary damages.
28  Plaintiff appears to allege that on February 7, 2007, Mills prevented him from leading

2

Muslim prayer, but allowed another inmate with "no knowledge" to lead prayer.  Plaintiff alleges that the next day, he asked Ayers if plaintiff could lead the prayers, but Ayers agreed with Mills and "forced" him "to pray behind" another inmate "with no knowledge of the Quran nor Arabic which the prayer require (sic)."

Plaintiff alleges that, on March 31, 2007 and April 14, 2007, Lopez stopped him from praying in the corner behind the law library.  Plaintiff also alleges that Lopez harassed and threatened him because he filed a grievance and complaint with the Warden.

Based on the allegations in plaintiff's complaint, he may be able to plead some claims for relief under section 1983.  However, the events complained of by plaintiff, as plead, do not rise to the level of constitutional violations.

The court will provide plaintiff with the opportunity to file an amended complaint that complies with Rule 8(a) and sets forth for each defendant, as briefly as possible, what action that defendant took or failed to take and why.  In the subsections that follow, the court will provide plaintiff with the legal standards that, based on plaintiff's allegations, appear to be applicable. Plaintiff should utilize the legal standards provided in this order for guidance when filing his amended complaint.

      1.    <u>Linkage Requirement</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See <u>Monell v.  Department of Social Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th

Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Plaintiff has named three defendants and refers to "an Officer" in his statement of claim. In order to proceed under section 1983, plaintiff must allege sufficient facts to support a claim that *each* defendant named in the complaint either acted or failed to act in a manner that was adverse to plaintiff and that the defendant did so in retaliation against plaintiff for either litigating in court or filing inmate grievances. Plaintiff is cautioned that in his amended complaint, he must clearly identify what actions or omissions led to the violation of his rights and which defendants were responsible for the acts or omissions.

    2.    Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing

inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff alleges that Lopez harassed and threatened him because plaintiff filed a grievance and complaint with the Warden. Plaintiff fails to allege: what actions Lopez took to harass and threaten plaintiff; what grievance and/or complaint plaintiff had filed that was the basis for Lopez's actions; and whether Lopez's actions reasonably advanced a legitimate correctional goal.

        3.        Freedom of Religion

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by

his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

"To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 382 U.S. at 349. Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

Plaintiff alleges that Mills and Ayers violated his right to freedom of religion when they did not allow him to lead the Muslim prayer and "forced" him to "pray behind" another less knowledgeable prisoner. Not being allowed to be the leader of a religious service is not a substantial burden on plaintiff's exercise of religion, nor does it rise to the level of an interference with a central religious belief sufficient to violate plaintiff's constitutional rights.

Plaintiff alleges that Lopez violated his right to freedom of religion by stopping plaintiff from praying in the corner behind the law library on two occasions. Plaintiff has alleged insufficient facts for the court to determine whether these actions by Lopez constitute a substantial burden on plaintiff's exercise of religion, or rise to the level of an interference with a

central religious belief sufficient to violate plaintiff's constitutional rights.

Plaintiff has not shown that he was prevented from engaging in conduct mandated by his faith, nor has he addressed whether any legitimate penological interests motivated the acts he complains of. Thus, plaintiff has failed to state a cognizable claim for violation of his constitutional rights to freely exercise his religion.

II.     Conclusion

Plaintiff's complaint does not state any claims upon which relief may be granted under section 1983. The court will provide plaintiff with the opportunity to file an amended complaint, if plaintiff wishes to do so.

In the event that plaintiff does wish to amend his complaint, plaintiff is advised Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, plaintiff must file an amended complaint curing the deficiencies identified by the court in this order; and

3.     If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:**   **February 25, 2008**           **/s/ Dennis L. Beck**
                                                  UNITED STATES MAGISTRATE JUDGE